Moncrief, J.
The defendant, having been arrested under one of the subdivisions' of § 179 of the Code, tenders an undertaking under § 187. Upon an examination of the sureties, it appears that they are practising attornies and counsellors of this Court.
*710 The counsel for the plaintiffs objects to them as disqualified and incompetent on that ground, and (citing 7 Abb. 73; 15 Johns. 535) contends that the bail should be rejected. The note under § 187 of the Code cites authorities as decisive on the point.
Upon a careful examination of all the authorities, it will be found that the practice arose from the rule of the Court of King’s Bench, (in 1654, 6 Geo. II. § 1; 1 Henry Blackstone, 76; Laing v. Cundale,) whereby “ It was ordered by the Lord Chief Justice and the rest of the Justices of that court, that from and after the last day of the (Michaelmas) term, no attorney of that or any other court, or any person practising as such, shall be bail in any suit or action depending in that court.” This rule was intended to protect and benefit the attornies, (and subsequently was extended to their articled clerks.) (Cowp. 828; 2 East, 182.)
Graham, in his practice, (2d edition, p. 80,) says: “ attornies are inadmissible as bail, because of the desire of the courts to protect them from the importunities of their clients,” and cites 15 Johns. 535 ; 1 Wen. 35.
An attorney, becoming bail, could not be treated as a nullity; it was necessary to except to the bail, and oppose it upon the ground that the rule excluded him. (2 East, 181-2; 1 Taunton, 162.)
In 15 Johns. 536, the Court say, “The rule of the Court of King’s Bench was cited, and as there appeared to be good reason for the rule, it was approved and adopted ; and the attorney in that case was held to be not good bail.” (See also 1 Legal Obs. 714.)
It is indisputable that an attorney was not good bail up to the time of the passage of the Code. The same reason still exists to exclude him which led to the adoption of the rule in England, nearly three centuries since, and to its approval'and adoption in this State in 1818, (15 Johns.) and the constant recognition thereof, with but one or two recorded instances of attack-against its enforcement. While the abstract right of an attorney otherwise qualified to become bail may exist, there may be said to be • a greater necessity, at the present time, to continue the rule than at any former period. The hardship it may occasion, in some 1 *711 instances, like the present, is more than outweighed by the benefit conferred upon those for whose protection it was created.
§ 194 of the Code, which prescribes the qualifications of bail is, in substance, like the pre-existing rule—and, in my opinion, was desigued to be merely declaratory of the established practice, and not to introduce a new rule.
It is quite evident that every person cannot be accepted as bail who is a resident and freeholder, within this State, and worth the requisite amount of property.
A married woman, a minor, or a consul of a foreign government, a plaintiff cannot be required to accept as bail.
It s not an unjust construction of § 194, that it merely declares the affirmative qualifications essential to sufficient bail, without affecting the established practice which disqualifies certain persons from being made bail, against the objection of the plaintiff, although they may, independent of these disqualifying facts, be admissible as bail.
As it is evident that every person who would fully meet all she demands of the mere language of § 194, cannot become bail, it is, in my opinion, a proper construction to hold that there is nothing in it inconsistent with the settled practice which rejected attornies, officers of the court, and persons permanently or temporarily privileged; and that § 469 retains' that practice, and continues it in force.
The objection must, therefore, be sustained, and the sureties rejected as not good bail.
*712 l